```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| NELSON VEGA-RUIZ, LYDIA RUIZ-MENDOZA,<br><br>**Plaintiff(s)**<br><br>v.<br><br>WAL-MART PUERTO RICO INC.,<br><br>**Defendant** | **CIVIL NO.** 08-2416(JAG) |

**OPINION AND ORDER**

Pending before the Court is Wal-Mart Puerto Rico Inc.'s Motion for Summary Judgment. (Docket No. 39). For the reasons set forth below, said motion is hereby **GRANTED**.

**FACTUAL BACKGROUND**

On December 29, 2008, Nelson Vega-Ruiz ("Plaintiff") and his mother filed the instant action against Walt-Mart Puerto Rico, Inc. ("Wal-Mart" or "Defendant"). (Docket No. 1). Plaintiff, alleges that Wal-Mart interfered with his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2414 *et seq.*, and that it eventually terminated him after taking a leave under said act to care for his mother. Id. He also claims wrongful discharge under Puerto Rico Law 80 and damages under

Art. 1802 of the Puerto Rico Civil Code. His mother, Lydia Ruiz Mendoza, claims damages for pain and suffering.[1]

Plaintiff started working in 1993 for Pace, which was subsequently purchased by Wal-Mart. (Defendant's Statement of Uncontested Facts ["DSUF"], Docket No. 39-1, ¶ 1-2). By 2006-2007, he was a Divisional Merchandise Manager in charge of, among other things, the purchasing of merchandise and the supervision of associates. Id. at ¶ 4.

On August 7, 2006, Plaintiff went on five weeks of FMLA leave because he was operated for diverticulitis. (DSUF, ¶ 36). Four days before going on said leave, on August 3, 2006, Wal-Mart gave Plaintiff a written warning and coaching for alleged problems with absenteeism, tardiness and leadership. (DSUF, ¶ 35). After the five week medical leave, he returned to work under the same terms and conditions as Divisional Merchandise Manager. (DSUF, ¶ 37).

On November 2006, Defendant gave Plaintiff a coaching for allegedly using the corporate credit card for personal matters on several occasions. (Plaintiff Additional Relevant Fact ["PARF"], ¶ 18). At the time, Plaintiff expressed his disagreement regarding the use of the credit card and denied any

---

[1] Plaintiff also brought claims under ADEA, P.R. Law 100 and COBRA. Said claims were dismissed pursuant to a Stipulation for Partial Voluntary Dismissal under Fed.R.Civ.P. 41(a)(1)(ii). (Docket No. 43).

misappropriation of funds. Id. at ¶ 19. Months later, on March 2007, Plaintiff's performance was evaluated positively for the 2006-2007 period and his salary was increased. Id. at ¶¶ 23, 25.

At the beginning of June 2007, Plaintiff spoke to his supervisor and informed him that his mother would be having surgery and that he needed to take June 11-15, 2007 off as vacation days. Id. at ¶ 28. The surgery, however, was unexpectedly delayed and Plaintiff contacted his supervisor to inform him he would need additional days but was told they would talk later. Id. at ¶¶ 30-31. He followed up through an email in the morning of June 18, 2007 and was granted the additional days. Id. at ¶ 32. Upon his return to work, Plaintiff was terminated for alleged misuse of the corporate credit card, absenteeism and tardiness. Id. at ¶¶ 35-36.

As stated above, on December 29, 2008, Plaintiff filed the case at bar. After the completion of discovery, Wal-Mart filed a Motion for Summary Judgment. (Docket No. 39). In it, Defendant avers among other arguments, that summary judgment is proper because Plaintiff's retaliation claim in relation to the August 3, 2006 warning is time-barred. Specifically, it argues that the complaint was filed more than two years after the warning in question and that Plaintiff has not established that its conduct was willful, which would extend the statute of limitation from two to three years. It further alleges that it terminated

Plaintiff because he used the corporate credit card for personal expenses, not because of his request for leave on June 2007. Regarding the last argument, it alleges that Plaintiff has been unable to show that its proffered reason is pretextual and that, therefore, no material issue of fact exists to preclude summary judgment.

Plaintiff filed his opposition to the Motion for Summary Judgment (Docket No. 50) and an Opposition to Defendant's Statement of Uncontested Facts, as well as additional facts (Docket No. 51). In essence, it avers that his claim in relation to the August 3, 2006 warning is not a retaliation claim, as Defendant construes it, but an interference claim. Regarding the timeliness of the complaint, he alleges that it is not time-barred because Wal-Mart acted with reckless disregard towards his rights and, in the alternative, that the warning was part of a continuous chain of misconduct. Furthermore, in relation to the reason proffered by Walt-Mart for his termination, Plaintiff contends that it is a pretext because it stems from a partial and misleading quotation of the Credit Card Policy. According to him, the policy allows for the personal use of the corporate credit card as long as said expenses are excluded from those expenses that are to be reimbursed by the company.

Defendant filed a Reply (Docket No. 71)[2] and Plaintiff filed a Sur-Reply (Docket No. 77). Plaintiff also filed a Motion to Strike (Docket No. 49) which the parties also briefed *ad nauseam*. However, the Court will not entertain it given that none of the statements and exhibits submitted by Wal-Mart that are in any way materially significant to the decision issued today were challenged therein.

**STANDARD OF REVIEW**

1. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett,

---

[2] As per Order granting Motion for Miscellaneous Relief (Docket No. 73), only pages 42-62, both inclusive, of Defendant's Reply will be considered by the Court.

477 U.S. 317, 323 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's favor." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before a Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment. Anderson, 477 U.S. at 248. The opposing party must demonstrate "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted). Moreover, on issues "where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." United States v. Union Bank for Sav. & Inv.(Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (citing United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (citing Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)). It is important to

note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts, as they are jury functions, not those of a judge. Anderson, 477 U.S. at 255.

## ANALYSIS

The FMLA creates substantive rights and protection for the exercise of those rights. Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325 (1st Cir. 2005). Said act allows an eligible employee to take up to 12 weeks of unpaid leave in a 12-month period for the birth, adoption, or assumption of foster care of a child; for the care of a spouse or immediate family member with a serious health condition; and for a serious health condition that prevents the employee from performing the functions of his or her job. 29 U.S.C. § 2612 (a)(1). The FMLA prohibits employers from interfering with or denying the exercise of rights protected by the Act. 29 U.S.C. § 2615(a)(1). In addition, the FMLA prohibits employers from discriminating or retaliating against employees who exercise their rights under the Act. 29 U.S.C. § 2615(a)(2); Roman v. Potter, 604 F.3d 34 n.7 (1st Cir. 2010).

In the absence of direct evidence of discrimination, Courts, including the First Circuit, apply the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Hodgens v. General Dynamics Corporation, 144 F.3d

151, 160 (1st Cir. 1998). To make a *prima facie* case under the FMLA, a plaintiff must show that (1) he availed him or herself of a protected right under the FMLA; (2) that he was adversely affected by an employment decision; and (3) that there is a causal connection between the employee's protected activity and the employer's adverse employment action. Id. at 161.

Once a plaintiff establishes a *prima facie* case, an employer has to articulate some legitimate nondiscriminatory reason for the adverse employment action. Id. at 161. After said reason is proffered, through admissible evidence, the plaintiff retains the ultimate burden of showing that the employer's stated reason is a pretext. Id. at 162. The evidence and inferences presented by the plaintiff when establishing his or her *prima facie* case may be taken into account by the court in determining if the employer's proffered reason is a pretext. Id.

A plaintiff may establish pretext by different means, including proving disparate treatment. "To successfully allege disparate treatment, a plaintiff must show that others similarly situated […] in all relevant respects were treated differently by the employer." Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23 (1st Cir. 2008) (internal quotations omitted). "The comparison cases 'need not be perfect replicas,' but they must 'closely resemble one another in respect to relevant facts and

circumstances.'" Id. at 24 (citing Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999).

The FMLA establishes a general, two-year statute of limitations that begins to accrue on the date of the last event constituting the alleged violation for which the action is brought. 29 U.S.C. § 2617(c)(1). It states, however, that in cases of willful violations the action must be brought within three years of the date of the last event constituting the alleged violation. 29 U.S.C. § 2617(c)(2).

### 1. Plaintiff's retaliation claim

Plaintiff alleges that he was terminated after returning from the authorized leave he requested when his mother was submitted to heart surgery. The Court will assume, *arguendo*, that Plaintiff has established a prima facie case, a technique that has been employed by the First Circuit in the past. See Hillstrom v. Best Western TLC Hotel, 354 F.3d 27 (1st Cir. 2003). Therefore, it will analyze whether Wal-Mart's proffered nondiscriminatory reason for Plaintiff's termination is legally sufficient to justify a judgment in its favor and whether Plaintiff has established that said explanation is pretextual.

Walt-Mart avers that it terminated Plaintiff because he had continued to misuse the corporate credit card even after it had given Plaintiff coaching for it on November 2006, and because of tardiness and unjustified absences. Plaintiff retorts that

Civil No. 08-2416 (JAG)                                              10

Defendant's Credit Card Policy does not prohibit the use of the credit card for personal expenses and that Walt-Mart's mischaracterization of the policy clearly indicates the existence of a pretext. He also states that Walt-Mart has not produced a single document to establish his absences and lack of punctuality.

Regarding the Credit Card Policy, Plaintiff states that it permits the use of the card for personal expenses if they are excluded from the expenses to be reimbursed by Wal-Mart. (Docket No. 50, p. 19). In accordance with his interpretation of the policy, he would use the card for personal expenses, receive the statement, pay the balance and deduct the personal expenses from the amount stated in the voucher through which he requested reimbursement. Id.

> Walt-Mart's Credit Card Policy states:
>
> The Associates are not allowed to charge personal expenses to their corporate card. The incidental personal expenses related to work travel expenses (i.e., personal expenses of lodging, charges to the room for rent of movies, dry cleaning during work travel) may be included in the company's credit card. However, such personal expenses should be excluded correctly from the expenses to be reimbursed, declared on the expense form. If, for any reason, an Associate inadvertently charges a personal expense, not related to work travel, he should report it to his supervisor immediately. (Exhibit No. 3, Docket No. 63-4, p. 2).

As can be easily surmised from the cited text, the general rule is that corporate cards are not to be used for personal

expenses unless the expenses are incidental to work travel. If a personal expense that is not incidental to work travel is inadvertently charged, a supervisor is to be notified immediately. Therefore, Plaintiff errs in his interpretation of the policy since it does not authorize personal expenses even if they are deducted from the amount to be reimbursed.

During Plaintiff's deposition he testified that he had used the corporate credit card for personal expenses to buy gasoline, for a purchase at J.C. Penney and at two different restaurants on several occasions. (Exhibit No. 4, Docket No. 63-5, pp. 39-40, 49, 52, 53-54, 63). He also admitted that those expenses had not been authorized by the company, that the November 6, 2006 coaching was given to him because he used the card for personal expenses and that on that date he was told that he could be terminated if he continued to use the card in said manner. Id. at 64.

The Court finds that Wal-Mart offered a valid nondiscriminatory reason for Plaintiff's termination and that Plaintiff has not been able to establish that said reason is pretextual. Plaintiff's argument that it is Wal-Mart who mischaracterizes its Credit Card Policy is clearly flawed since a simple reading of the pertinent section of the policy leaves no doubt as to the prohibition of the use of the card for personal expenses. The fact that, under the terms of the policy,

an employee is to pay all expenses and then request a reimbursement does not preclude the application of the policy's clear prohibition.

Neither has Plaintiff alleged disparate treatment. That is, whether other similarly situated employees have been treated differently regarding the use of the corporate credit card for personal expenses. Furthermore, even if the Court were to consider that Defendant has not produced attendance logs to support its assertion that tardiness and absenteeism were also factors in its decision to terminate Plaintiff, the result would be the same. The admitted misuse of the credit card is sufficient to find that Defendant has a non-pretextual, valid, and nondiscriminatory reason for terminating Plaintiff. Therefore, summary judgment dismissing the retaliation claim is warranted.

**2. The August 3, 2006 warning claim**

Plaintiff also avers that Wal-Mart interfered with his FMLA right when it gave him a warning on August 3, 2006. Defendant, on the other hand, posits that said claim is time-barred because the complaint was filed more than two years after the warning was issued. Plaintiff, on the other hand, argues that the three-year statute of limitations set out in 29 U.S.C. § 2617(c)(2) applies because Defendant willfully violated his rights under the FMLA.

Case 3:08-cv-02416-JAG   Document 102   Filed 12/27/10   Page 13 of 16
Civil No. 08-2416 (JAG)                                              13

The First Circuit has held that "in order to establish a willful violation of the FMLA, a plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute'." Hillstrom, 345 F. 3d at 33 (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). It further stated, citing McLaughlin, that "if an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful… If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then it should not be considered [willful]." Id (alterations in original).

In order to support his allegations that Wal-Mart's actions in relation to the August 3, 2006 warning were willful, Plaintiff points to the temporal proximity between the warning and his FMLA leave; the fact that the warning was unjustified because authorized absences were being counted as unauthorized; and the fact that before leaving he was asked to turn in his office key and clean up the office. (Docket No. 50, pp. 12-13; Docket No. 51, ¶¶ 11-14). In the alternative, Plaintiff alleges that the warning in question was part of a continuous chain of misconduct that ultimately resulted in his termination. (Docket No. 50, p. 13).

The Court is not persuaded by Plaintiff's arguments in favor of the application of the three-year statute of

limitations. Temporal proximity does not equate to causation. The fact that Walt-Mart issued a warning three days before Plaintiff's leave does not mean that the warning was issued with reckless disregard. It could be considered that Walt-Mart acted unreasonably by issuing the warning when it did, but this possible lack of reasonableness does not, by itself, indicate willfulness.

Regarding the justification of the warning, the document itself indicates that it was issued for absenteeism and tardiness, as well as for "[l]ack of follow through, leadership abilities, appropriate direction and associate accountability." (MSJ, Exhibit 10, Docket No. 39-13). In his Coaching Comments & Action Plan of August 4, 2006, Plaintiff expressed that he did not agree with all areas identified in the warning. (Exhibit Px 6, Docket No. 52-5). However, a review of his comments reveals that he agreed that there were several areas related to his role as a supervisor that could be improved. Given this, the Court finds that even if Plaintiff alleges that several of the absences taken into account by Walt-Mart were actually authorized absences, the warning was at least partially justified, which precludes a finding of recklessness or willful disregard of his FMLA rights.

Plaintiff further argues that he was asked to return his office key and clean out his office before going on medical

leave. Beyond stating that it made him fear he would lose his job, Plaintiff fails to identify how this shows reckless disregard for his FMLA rights. He did not explain if he was given a different office when he got back, if he got the same office or if he was not given an office at all. In fact, Plaintiff stated that he returned to work under the same terms and conditions after his medical leave therefore indicating that the office incident did not have further consequences.

Finally, even if the warning were to be conceived as a part of a continuous chain of misconduct, it would still be time-barred because the last event of the alleged chain, the termination, has not been considered by the Court as a violation of the FMLA.

## CONCLUSION

For the reasons stated above, Walt-Mart's Motion for Summary Judgment is hereby **GRANTED**. Specifically, both FMLA claims are hereby dismissed with prejudice and, since no federal claims remain, all supplemental claims are also dismissed without prejudice. Costs are awarded to Defendant.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of December, 2010.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge